UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

FILED
03 NOV 24 PM 12:04
U.S. DISTRICT COURT
N.D. OF ALABAMA

| | | |
|---|---|---|
| CITY OF ATHENS, ALABAMA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No. CV-03-S-2430-NE |
| | ) | |
| CHARTER COMMUNICATIONS | ) | |
| HOLDING COMPANY, L.L.C., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

ENTERED

## MEMORANDUM OPINION

Salvatore D. Ferlazzo and Tanya A. Yatsco have filed motions to be admitted to the bar of this court *pro hac vice,* for the purpose of representing the plaintiff in this action.[1] Both Ferlazzo and Yatsco have satisfied the requirements of Local Rule 83.1(b) with regard to admission *pro hac vice*.[2] Nonetheless, defendants contend that, pursuant to Local Rule 83.1(f), neither Ferlazzo nor Yatsco should be admitted *pro hac vice* because their firm, Girvin & Ferlazzo, P.C., has violated the Alabama Rules of Professional Conduct in the representation of plaintiff in this matter.[3] The court disagrees.

Rule 83.1(f) of this court's local rules provides:

> Each attorney who is admitted to the bar of this court or who appears in this court [*pro hac vice*] is required to be familiar with, and shall be governed by, the Local Rules of this court and, to the extent not inconsistent

---

[1] Doc. nos. 9 & 10.

[2] Specifically, Ferlazzo and Yatsco have certified that they are members in good standing of the bar of the United States District Court for the Northern District of New York, and they have each paid the required $50 fee. *See* doc. nos. 9 & 10.

[3] *See* doc. no. 12.



with the preceding, the Alabama Rules of Professional Conduct.... Acts and omissions by any such attorney which violate such standards, individually or in concert with any other persons, shall constitute misconduct, whether or not occurring in the course of an attorney-client relationship, and shall be grounds for discipline .... Discipline under this Rule may consist of disbarment, suspension, censure, reprimand, removal from a particular case, ineligibility for appointment as court-appointed counsel, ineligibility to appear [*pro hac vice*], monetary sanctions, or any other sanction the court may deem appropriate.

Defendants contend that Ferlazzo and Yatsco acted in concert with Rusty Monroe, the expert witness allegedly hired by their firm to assist plaintiff in this matter,[4] to violate Rules 3.6 and 4.1 of the Alabama Rules of Professional Conduct.[5] According to defendants, Monroe disclosed information regarding the parties' settlement negotiations to a newspaper reporter, in violation of the parties' agreement to keep settlement discussions confidential.[6]

*The Decatur Daily* printed an article, stating that the City of Athens had rejected "a $1.6 million offer from [defendant] Charter to excuse all safety violations," and attributed Monroe as the source of that statement.[7] Defendants contend that Ferlazzo and Yatsco violated Rule 3.6 of the Alabama Rules of Professional Conduct because Monroe's statements "would be inadmissible at trial and [are] likely to create a substantial risk of

---

[4] The parties dispute whether Monroe actually works for Girvin & Ferlazzo, or for the City of Athens directly. However, it is undisputed that Monroe was hired by someone to assist the City of Athens in this lawsuit.

[5] Doc. no. 12 at ¶¶ 4-5.

[6] *Id.* at ¶ 2. The parties' arguments are largely focused on the alleged violation of the confidentiality agreement. However, violation of the agreement itself is not relevant to this analysis, because Local Rule 83.1 only lists violations of the Alabama Rules of Professional Conduct as grounds for discipline. The only Rules of Professional Conduct allegedly violated by Ferlazzo and Yatsco are Rules 3.6 and 4.1. Any allegations of misconduct that do not correspond to a violation of those rules can be disregarded.

[7] *See id.* at Exhibit A.

prejudicing an impartial trial."[8] Further, defendants argue that Monroe violated Rule 4.1 of the Alabama Rules of Professional Conduct because the statement he allegedly made is false.[9]

Since defendants filed their initial objection to the motions for admission *pro hac vice*, the parties have wasted the court's time with a ridiculous flurry of responses and counter-responses, denials and responses to denials, with each party vehemently insisting that the other's allegations are baseless, untrue, and/or potentially sanctionable.

Yatsco responded to defendants' allegations, stating that she has no personal knowledge of any of the events related to the settlement negotiations or to the alleged disclosure of confidential information.[10] Yatsco did not become involved in this case until September of 2003, upon its removal to federal court.[11] Nonetheless, Yatsco denies both that Monroe was acting as her firm's expert witness when he made the alleged statements at issue, and that her firm was acting in concert with Monroe at the time.[12]

Ferlazzo also submitted an affidavit in response to defendants' allegations.[13] He admits that the parties agreed to maintain confidentiality regarding the settlement

---

[8]*Id.* at ¶ 4. Rule 3.6(a) of the Alabama Rules of Professional Conduct provides: "[a] lawyer shall not make an extrajudicial statement that a reasonable person would expect to be disseminated by means of public communication if the lawyer knows or reasonably should know that it will have a substantial likelihood of materially prejudicing an adjudicative proceeding."

[9]*Id.* at ¶ 5. Rule 4.1 provides, in pertinent part, that "[i]n the course of representing a client a lawyer shall not knowingly: (a) make a false satement of material fact or law to a third person."

[10]Doc. no. 18 (Yatsco affidavit) at ¶ 2.

[11]*Id.*

[12]*Id.* at ¶ 3.

[13]Doc. no. 17.

negotiations, but denies that he, or any other member of his firm, was acting "in concert" with Monroe when Monroe made statements to a newspaper reporter regarding aspects of the confidential settlement negotiations.[14] Specifically, Ferlazzo states that Monroe was retained directly by the City of Athens, not by his firm, and that Monroe had been working with the city long before Girvin & Ferlazzo, P.C., was retained in this matter.[15] Ferlazzo maintains that he was unaware Monroe had made any statements to a newspaper reporter until the article was published, and he insists that defendants should have consulted with him about that fact before they accused him of acting in concert with Monroe.[16] Ferlazzo also asserts that the city's rejection of a settlement offer would have been a matter of public record, pursuant to Section 13A-14-2 of the Alabama Code and the holding of the Supreme Court of Alabama in *Dunn v. Alabama State University Board of Trustees,* 628 So. 2d 519 (Ala. 1993); consequently, it was not improper for Monroe to disclose the information.[17] Finally, Ferlazzo states that Monroe's statements were not false, because Charter *did* make the settlement offer he disclosed.[18] In support of his assertion, Ferlazzo produced a letter, dated April 21, 2003, in which Charter stated the following as one factor in the settlement it was proposing:

---

[14] *Id.* at ¶¶ 3-4.

[15] *Id.* at ¶¶ 4-8.

[16] *Id.* at ¶ 8.

[17] In *Dunn,* the Alabama Supreme Court held that, even though discussions between a public body and its attorney regarding facts involved in a lawsuit and the legal ramifications of those facts are protected by the attorney-client privilege, settlement discussions based on those facts must be open to the public, under the state's "Sunshine Law." *Dunn,* 628 So. 2d at 529-30.

[18] Ferlazzo affidavit at ¶ 13; *see also* Ferlazzo affidavit at Exhibit D.

> The current pole attachment agreement would be renegotiated to increase the annual fee from $5.00 to $15.00 per pole. . . . Based on the approximately 16,000 poles for which Charter is currently paying, this would result in an [sic] very significant increase to the City of $160,000 per year or $1.6 million over 10 years.[19]

The letter also listed several other terms of the proposed settlement, including duties the City of Athens would be required to perform.[20]

Defendants filed a response to Ferlazzo's affidavit, asserting that the letter Ferlazzo relied upon to support the truth of Monroe's disclosures "is not pertinent to the issue at hand," because it was sent "several months before the settlement meeting at issue."[21] Further, defendants assert that Monroe's statements did not accurately reflect what was stated in the letter, because the $1.6 million offer was contingent upon several factors, not just the city's agreement "to excuse all safety violations."[22] Defendants also allege that Monroe has worked with Ferlazzo and his firm on many occasions in the past, and that Monroe and Ferlazzo have worked together on this case for almost two years.[23] Based on Monroe's past and present professional relationship with Ferlazzo and his firm, defendants speculate that Monroe must have been acting in concert with Ferlazzo and his firm when he disclosed confidential information to *The Decatur Daily*.

Finally, putting an end to the seemingly endless cycle of objections and responses,

---

[19] Ferlazzo affidavit at Exhibit D.

[20] *See id.*

[21] Doc. no. 20 (response affidavits of Sal Ferlazzo and Tanya Yatsco), appended to motion for leave to file response to Ferlazzo and Tanya Yatsco.

[22] *See id.* at ¶ 5.

[23] *Id.* at ¶¶ 8-9.

Ferlazzo filed a response to defendants' response to the affidavits he and Yatsco filed in response to defendants' response to his and Yatsco's motions for admission *pro hac vice*.[24] Ferlazzo makes no substantial legal arguments in his response. Instead, he asserts that defendants had no factual basis to support the allegations of his misconduct, and that mere speculation should not be the basis of denying him and Yatsco admission *pro hac vice*.[25] Ferlazzo then proceeds to engage in his own speculation: he states that defendants' true motive for objecting to his and Yatsco's motions for admission *pro hac vice* is to deprive the City of Athens of the experience and expertise he has gained in representing other municipalities in similar actions against Charter and its corporate predecessors in the past.[26] Ferlazzo also speculates that defendants were motivated by their dislike of Monroe, because Monroe is well-known for advising many municipalities in relation to actions brought against cable companies.[27]

This court is not interested in either party's speculations.

Instead, the court is interested in the relevant law.

In the Eleventh Circuit, an attorney who is a member in good standing of his or her local bar association may not be denied the privilege of appearing *pro hac vice* in a district court, except "'on a showing that in any legal matter, whether before the particular district court or in another jurisdiction, he has been guilty of unethical conduct of such a nature as

---

[24]Doc. no. 21.
[25]*Id.* at ¶ 2.
[26]*Id.* at ¶¶ 6-7.
[27]*Id.* at ¶ 9.

to justify disbarment of a lawyer admitted generally to the bar of the court.'" *Schlumberger Technologies, Inc. v. Wiley,* 113 F.3d 1553, 1559 (11th Cir. 1997) (quoting *In re Evans,* 524 F.2d 1004, 1007 (11th Cir. 1975)).[28] A strong showing of misconduct is required for denying a motion for admission *pro hac vice* because, in the absence of such a showing, the district court necessarily must rely on the "presumption of good moral character" created by an attorney's admission to his or her local bar association. *Schlumberger,* 113 F.3d at 1559 (citing *Evans,* 524 F.2d at 1007).

When a district court believes the evidence presented to it may justify denying an attorney's admission *pro hac vice*, it must first conduct a hearing, and "give the attorney adequate notice of all incidents of alleged misbehavior or unethical behavior that will be charged against him." *Evans,* 524 F.2d at 1008. At the hearing, the court must rely on specific incidents of misconduct, not general or conclusory allegations, conjecture, speculation, or surmise. *Id.* In view of the undeniable fact that disbarment proceedings entail serious consequences for an attorney's career and reputation, "'the power [to disbar] is one that ought always to be exercised with great caution; and ought never be exercised except in *clear* cases of misconduct, which affect the standing and character of the party as an attorney." *Schlumberger,* 113 F.3d at 1562 (emphasis in original) (citations omitted).

The Alabama State Bar Association has adopted rules and standards that govern the procedure for imposing disciplinary sanctions on attorneys admitted to the practice of law

---

[28]The Eleventh Circuit has applied the standard set forth in *Evans,* and reinforced in *Schlumberger,* to an attorney's alleged violation of specific provisions of the Alabama Rules of Professional Conduct. *See generally Schlumberger,* 113 F.3d 1553.

within this state. These standards govern the analysis of whether Ferlazzo's and Yatsco's alleged misconduct rises to a level that would justify disbarment, because defendant's allegations of misconduct are based on violations of the Alabama Rules of Professional Conduct. The Alabama Rules of Disciplinary Procedure require a showing of "[c]lear and convincing evidence" for all types of disciplinary proceedings. *See* Ala. R. Disc. P. 19. Further, under the Alabama Standards for Imposing Lawyer Discipline, an attorney may be disbarred for violating Alabama Rule of Professional Conduct 3.6, but only if the attorney "knowingly violates a court order or rule with the intent to obtain a benefit for the lawyer or another, and causes serious injury or potentially serious injury to a party or causes serious or potentially serious interference with a legal proceeding." Alabama Standard for Imposing Lawyer Discipline 6.2.

An attorney may be disbarred for violating Rule 4.1 of the Alabama Rules of Professional Conduct *only if* the attorney, "with the intent to deceive the court, makes a false statement, submits a false document, or improperly withholds material information, and causes serious or potentially serious injury to a party, or causes a significant or potentially significant adverse effect on the legal proceeding." Alabama Standard for Imposing Lawyer Discipline 6.1.

The Standards for Imposing Lawyer Discipline also set forth several factors to be considered in mitigation of the level of discipline an attorney should receive, including: "(a) absence of a prior disciplinary record; (b) absence of a dishonest or selfish motive; . . .[and] (g) [the attorney's] character or reputation." Alabama Standard for Imposing Lawyer

Discipline 9.3.

Based on the evidence presented, this court cannot find that either Yatsco or Ferlazzo "knowingly violated" Rule 3.6 of the Alabama Rules of Professional Conduct, or that either attorney, acting in concert with another party, made a false statement "with the intent to deceive the court," thereby justifying disbarment for violating Rule 4.1 of the Alabama Rules of Professional Conduct. Regardless of whether the settlement statements attributed to Monroe were confidential, whether they created an unreasonable risk of prejudicial pre-trial publicity, or whether they were materially false, defendants have not made a sufficient showing that Yatsco and Ferlazzo were acting in concert with Monroe when he made the alleged statements. Yatsco and Ferlazzo both deny having any knowledge of Monroe's statements until after the statements had been published in *The Decatur Daily*. The only "evidence" submitted by defendant to rebut these assertions is their *speculation* that Yatsco and Ferlazzo *must have been* acting in concert with Monroe, because Monroe has a long-standing professional relationship with Girvin & Ferlazzo, P.C. This speculation does *not* constitute "clear and convincing evidence" of such severe misconduct by Yatsco and Ferlazzo as to justify disbarment.

Clearly, this dispute is too petty to justify disbarring Yatsco or Ferlazzo. Accordingly, the court will not conduct an evidentiary hearing. *See Evans,* 524 F.2d at 1008 (stating that the court must hold a hearing *if* it believes the evidence justifying the objection to an attorney's motion for admission *pro hac vice*). No grounds exist under Local Rule 83.1(f) for denying their motions for admission *pro hac vice,* and the motions should be granted. *See*

*Schlumberger,* 113 F.3d at 1561 ("Absent a showing of unethical conduct rising to a level that would justify disbarment, the court *must* admit the attorney."). An appropriate order will be entered contemporaneously herewith.

DONE this **24th** day of November, 2003.

_____
United States District Judge